**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUHAMMAD BUTT, *on behalf of himself,*<br>*FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>MDS CONSTRUCTION MANAGEMENT, LLC,<br>GOHAR CONSTRUCTION CORP.,<br>MOR DIAO, and<br>AZHAR BHATTI,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE**<br>**ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, MUHAMMAD BUTT ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, MDS CONSTRUCTION MANAGEMENT LLC, GOHAR CONSTRUCTION CORP. ("Corporate Defendants"), MOR DIAO and AZHAR BHATTI, ("Individual Defendants", and collectively with Corporate Defendants, "Defendants") and states as follows:

## <u>INTRODUCTION</u>

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from

Defendants: (1) unpaid wages, including overtime compensation, (2) unpaid wages, including overtime compensation, due to policies of time-shaving, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff additionally alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime compensation, (2) unpaid wages, including overtime compensation, due to policies of time-shaving, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3.      Plaintiff further alleges that Defendants failed to pay him and Class Members prevailing wages for work they performed on multiple public works projects. In doing so, Defendants: (1) breached the implied covenant of good faith and fair dealing regarding Plaintiff's and Class Members' employment contracts, (2) breached contracts with government instrumentalities which harmed Plaintiff and Class Members as third-party beneficiaries of these contracts, (3) unjustly enriched themselves at the expense of Plaintiff and Class Members, and (4) engaged in fraudulent conduct against Plaintiff and Class Members.

4.      Plaintiff additionally alleges that, pursuant to the Internal Revenue Code, 26 U.S.C. § 7434, he and others similarly situated are entitled to damages and fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

5.      Plaintiff individually alleges that Corporate Defendant GOHAR CONSTRUCTION CORP. and Individual Defendant AZHAR BHATTI ("Subcontractor Defendants") unlawfully retaliated against him, in violation of the FLSA and NYLL, and seeks to

recover from Subcontractor Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391, as Defendants perform substantial business in this district.

## PARTIES

8.    Plaintiff is a resident of Kings County of New York.

9.    Corporate Defendant MDS CONSTRUCTION MANAGEMENT, LLC ("MDS") is a domestic limited liability company organized under the laws of the state of New York with a principal place of business and registered address for service of process at c/o MOR DIAO & SOPHIETOU MANE, 1652 Park Avenue Apt 4H, New York, NY 10035. Individual Defendant MOR DIAO is the Agent for Service of Process for Corporate Defendant MDS.

10.    Corporate Defendant GOHAR CONSTRUCTION CORP. ("GOHAR") is a domestic business corporation organized under the laws of New York with a principal place of business and a registered address for service of process at c/o AZHAR BHATTI, 19 Crowell Avenue, Staten Island, NY 10314. Individual Defendant AZHAR BHATTI is the Agent for Service of Process for Corporate Defendant GOHAR.

11.    Individual Defendant MOR DIAO is a principal and owner of MDS. Individual Defendant MOR DIAO controlled and managed the daily operations of MDS. *See* **Exhibit A**,

screenshot of MDS' "leadership" section on their official website: https://mdsgroups.com/leadership/.

12.     Individual Defendant AZHAR BHATTI is the principal and owner of GOHAR. Individual Defendant AZHAR BHATTI controlled and managed the daily operations of GOHAR. Individual Defendant AZHAR BHATTI is listed as owner in the Blue Book Construction Network, a network of Construction Professionals. *See* **Exhibit B**, screenshot of GOHAR's page on Blue Book Construction Network.

13.     Corporate Defendant MDS is a construction company which contracts various projects including public work projects contracted with various government entities in New York City. Corporate Defendant MDS and Individual Defendant MOR DIAO are hereafter referred to as "Contractor Defendants".

14.     Corporate Defendant GOHAR is a construction company which contracts and subcontracts various construction projects.

15.     At all relevant times, Plaintiff was employed by Defendants.

16.     Corporate Defendants MDS and GOHAR entered into a subcontractor agreement wherein MDS is the prime contractor and GOHAR is the subcontractor with regard to MDS' contracted government projects or public work projects. This agreement entails that GOHAR's construction workers would be assigned to various government construction sites to perform part of the project which MDS has contracted. Thus, Corporate Defendants MDS and GOHAR are jointly and severally liable for the wage and hour violations alleged, in accordance with NYLL § 198(e).

17.     Because of the subcontractor relationship between Corporate Defendants MDS and GOHAR, MDS is responsible for managing and keeping track of the time worked by GOHAR's

employees on the government projects that MDS contracted. MDS is also responsible for compensating GOHAR's employees for the work they performed on the government projects that MDS contracted.

18.    Although MDS is responsible for timekeeping and compensating GOHAR's employees, GOHAR maintains control over the other aspects of employment of their workers such as hiring, firing, assigning duties, setting schedules, establishing work conditions and general supervision over their employees.

19.    For instance, Plaintiff was hired by GOHAR to work as a laborer. Plaintiff's duties, assignments and schedules were set by GOHAR, through its manager, Hazeem [LNU]. Plaintiff's employment was also terminated by GOHAR. Nevertheless, as Plaintiff was assigned by GOHAR to work on the government projects contracted by MDS, MDS tracked Plaintiff's work time and issued Plaintiff's paystubs. *See* **Exhibit C.**

20.    Defendants are associated and are joint employers, who act in the interest of each other with respect to their employees. Defendants have common policies and practices as to wages and hours and share control over Defendants' employees, dictating the times, places, and matters of Plaintiff's, FLSA Collective Plaintiff's and Class Members' employments. Defendants directly and/or indirectly employed Plaintiff, FLSA Collective Plaintiffs and Class Members.

21.    At all relevant times, Defendants exercised formal and functional control as it relates to all employees including Plaintiff and Class Members. Defendants exercised the power to fire and hire employees, supervise, and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Defendants issued and maintained employment records of Plaintiff, FLSA Collective Plaintiffs, and Class Members.

22.    At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and all regulations thereunder.

23.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

24.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including laborers, construction workers, contractors, apprentices, carpenters, electricians, painters, estimators, surveyors, pipefitters, welders, roofers, ironworkers, operators, installers, plumbers, engineers, specialists, and foremen, among others), employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

25.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have resulted in: (1) a complete failure to pay wages, including overtime, and (2) a failure to pay wages, including overtime, due to time-shaving. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

26.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

27.     Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former non-exempt employees (including laborers, construction workers, contractors, apprentices, carpenters, electricians, painters, estimators, surveyors, pipefitters, welders, roofers, ironworkers, operators, installers, plumbers, engineers, specialists, and foremen, among others), employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

28.     The Class Members are readily ascertainable. The number and identities of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

29.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

30.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. Plaintiff and Class Members were subjected to the same corporate

practices of Defendants, including (i) failing to pay wages, including overtime compensation, (ii) failing to pay wages, due to policies of time-shaving, (iii) failing to pay prevailing wages for public works projects, (iv) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the NYLL, (v) failing to provide accurate wage statements pursuant to the NYLL, (vi) breaching Plaintiff's and Class Members' personal employment contracts, (vii) breaching contracts with government instrumentalities which Plaintiff and Class Members are third-party beneficiaries, (viii) unjustly enriching themselves at the expense of Plaintiff and Class Members, and (ix) engaging in fraudulent conduct against Plaintiff and Class Members. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

31. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

32. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small

in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a) Whether Contractor Defendants is liable for the alleged wage and hour violations of Subcontractor Defendants under a theory of joint and several liability as outlined in NYLL § 198(e);

b)  Whether Defendants employed Plaintiff and Class Members within the meaning of New York law;

c)  What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

d)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

e)  Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

f)  Whether Defendants paid Plaintiff and Class Members the overtime premium at one-and-one-half times their regular hourly rates for all hours they worked in excess of forty (40) each workweek;

g)  Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked;

h)  Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked due to policies of time-shaving;

i)  Whether Defendants provided Plaintiff and the Class Members proper wage and hour notices at date of hiring as required under the New York Labor Law;

j)  Whether Defendants provided proper wage statements informing Plaintiff and Class Members of their actual hours, their proper overtime rates of compensation, and other information required to be provided on wage

statements with each payment of wages, as required under the New York Labor Law;

k)  Whether Defendants paid Plaintiff and Class Members prevailing wages on public works projects and, if not, what is the difference between these wages and the wages actually received by Plaintiff and Class Members;

l)  Whether Defendants breached Plaintiff's and Class Members' personal employment contracts;

m)  Whether Defendants breached contracts with government authorities of which Plaintiff and Class Members were third-party beneficiaries;

n)  Whether Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members; and

o)  Whether Defendants engaged in fraudulent conduct against Plaintiff and Class Members.

## STATEMENT OF FACTUAL ALLEGATIONS

### *Plaintiff's Employment Background*

35.    In or around January 2023, Plaintiff was hired by Subcontractor Defendants to work as a laborer for various construction projects, but mainly for public work projects subcontracted by Corporate Defendant MDS. Plaintiff's employment with Defendants ended in or around October 2023.

36.    Throughout his employment with Defendants, Plaintiff was scheduled to work five (5) days per week, Mondays to Fridays, for eight (8) hours per day from 7:00 a.m. to 3:00 p.m., for a total of forty (40) hours per week. In addition to his scheduled hours, Plaintiff was often required to perform off-the-clock work beyond his scheduled shift, for a duration ranging between

forty-five (45) minutes and two (2) hours. FLSA Collective Plaintiffs and Class Members were scheduled by Defendants to work similar hours.

37.    Throughout his employment, Plaintiff performed work for different public works projects contracted to MDS by numerous government authorities, which included work performed on public hospitals, military properties, and many other government structures. Plaintiff's various jobs included working in carpentry, concrete masonry, scaffolding, roofing, and many other types of construction labor.

38.    Under NYLL § 220(a), Defendants were required to pay prevailing wages to Plaintiff and Class Members for working on public works projects. This obligation was either expressly included in or incorporated by reference into Defendants' contracts with New York City government instrumentalities or any general contractors contracted by a government instrumentality.

39.    Accordingly, Plaintiff was paid at the prevailing wage rates by Corporate Defendant MDS. These prevailing wage rates varied depending on the project and the type of work performed. For instance, when Plaintiff performed general laborer duties, his pay rate was $51.84 per hour. When he performed work requiring special skills, he was paid $70.20 per hour. *See* **Exhibit C.** Similarly, FLSA Collective Plaintiffs and Class Members were paid by Corporate Defendant MDS at prevailing wage rates depending on the projects and type of labor they performed.

### *Timeshaving Claims*

40.    At all relevant times, Defendants subjected Plaintiff, FLSA Collective Plaintiffs, and Class Members to a policy of timeshaving, in violation of the FLSA and the NYLL. Apart from one work location, all other locations at which Plaintiff worked did not implement any time-

keeping systems to record employees' punch-in and punch-out times. Throughout his employment, Plaintiff was required by Defendants to work past his scheduled shifts for approximately between forty-five (45) minutes and two (2) hours each workday. Despite Defendants requiring this extra work, Defendants only compensated Plaintiff for his scheduled hours, and always failed to compensate Plaintiff for this extra post-shift work. Similarly, FLSA Collective Plaintiffs and Class Members were required by Defendants to work beyond their scheduled shifts without any compensation from Defendants.

41.    Furthermore, Plaintiff, FLSA Collective Plaintiffs and Class Members were additionally timeshaved for at least (15) minutes each workday. Plaintiff, FLSA Collective Plaintiffs and Class Members were assigned thirty (30) minutes of lunch break each workday, but Defendants required them to work through for half of their lunch break.

42.    Defendants' two policies of timeshaving resulted in approximately 8 hours and 7 minutes (8.125 hours) of uncompensated hours beyond Plaintiff's scheduled shift.

43.    Because Plaintiff was already scheduled by Defendants to work forty (40) hours per week, all of Plaintiff's extra unpaid hours worked were always overtime hours. Similarly, FLSA Collective Plaintiffs' and Class Members' unpaid hours worked were also unpaid overtime hours.

### ***Unpaid Wages Claims***

44.    Beyond the time worked on government owned construction sites, Subcontractor Defendants also required Plaintiff, FLSA Collective Plaintiffs and Class Members to work during the weekend on Defendants' non-government owned construction sites, or privately owned construction sites.

45.    Subcontractor Defendants required Plaintiff to work on Saturdays and Sundays on Defendants' privately owned construction sites, for eight (8) hours per day from 7:00 a.m. to 3:00 p.m., for a total of sixteen hours, with no compensation. Similarly, FLSA Collective Plaintiffs and Class Members were required to work on Saturdays and Sundays, with no compensation. Subcontractor Defendants did not pay Plaintiff, FLSA Collective Plaintiffs, and Class Members **any** wages for their hours worked on Saturdays and Sundays.

46.    Since Plaintiff, FLSA Collective Plaintiffs and Class Members were working beyond 40 hours per week, Plaintiff, Class Members and FLSA Collective Plaintiffs were entitled to one and half times the hourly statutory minimum wage, for every hour worked on the privately owned construction sites, serviced by Subcontractor Defendants.

47.    Out of fear for termination, Plaintiff, Class Members and FLSA Collective Plaintiffs were forced to provide Subcontractor Defendants with their demanded free labor on Saturdays and Sundays, just to keep the compensation he was already lawfully entitled to from his scheduled 5 workdays and remain employed with them. As a result, Plaintiff was not paid for 2 days' worth of labor by Subcontractor Defendants every week.

### *Unpaid Wages Through Extortion*

48.    After Subcontractor Defendants hired Plaintiff and Plaintiff began to work for GOHAR, GOHAR notified Plaintiff they would only pay him $220.00 per day, or $1100.00 per 5-day workweek, out of the total sum that Corporate Defendant MDS pays him every week. However, to avoid this wage theft from being documented, Subcontractor Defendants provided Plaintiff the full amount of his pay from Contractor Defendants every week and then extorted Plaintiff for the difference between the full sum he received from MDS and $1100.00 afterwards. If Defendants did not arrange Plaintiff to work over the weekends, to "make up for the difference",

Subcontractor Defendants would extort Plaintiff for the difference, requesting that he pay it back to Subcontractor Defendants, and threatening to immediately terminate if he failed to comply with such instructions. Similarly, Subcontractor Defendants extorted FLSA Collective Plaintiffs and Class Members for their prevailing wages paid by Contractor Defendants.

49.     For example, when Plaintiff earned $51.84 per hour for his scheduled 40 hours, Plaintiff would receive $2,073.60 from Corporate Defendant MDS. Subcontractor Defendants would then extort Plaintiff for the difference between $2,073.60 and $1,100.00, or $973.60 (47% of Plaintiff's weekly earnings). As detailed above, Subcontractor Defendants would force Plaintiff to "pay" the difference in two ways: (i) making arrangements for Plaintiff to work over the weekends, or (ii) forcing Plaintiff to actually pay the difference.

50.     Similarly, Class Members and FLSA Collective Plaintiffs suffered from unpaid wages through Subcontractor Defendants' extortion practices.

### *Breach of Contract, Unjust Enrichment, and Fraudulent Conduct Claims*

51.     As factually described above, Subcontractor Defendants extorted Plaintiff and Class Members for portions of their wages and/or free labor. Through this conduct, Subcontractor Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

52.     Further, by failing to pay the prevailing wages from public works projects to Plaintiff and Class Members, Subcontractor Defendants: (i) breached Plaintiff's and Class Members' personal employment contracts, and (ii) breached contracts with government authorities of which Plaintiff and Class Members were third-party beneficiaries.

53.     Additionally, when Plaintiff and Class Members were hired, they signed contracts with Subcontractor Defendants which detailed that Plaintiff and Class Members would receive

certain pay rates based on the contracts and types of labor they performed, which would result in certain amounts of weekly earnings for 5 days of labor.

54.     However, during the hiring and contract negotiation process, Subcontractor Defendants deceptively and fraudulently failed to inform Plaintiff and Class Members that once they begin working, they would either be required to (i) pay portions of these weekly earnings to remain employed or (ii) perform 2 additional days of unpaid labor to keep the entirety of their weekly earnings *and* remain employed. While going through the hiring and contract negotiation process, Plaintiff and Class Members were deceptively misled by Subcontractor Defendants to believe they would be working 5 days per week for certain amounts of pay, which Subcontractor Defendants knew in advance to be false.

55.     Plaintiff and Class Members reasonably relied on these contracts to be upheld by Defendants, as they performed extremely labor-intensive and highly skilled work which deserved adequate compensation with hourly rates that Defendants' contracts projected to range from as high as $50.00 to over $70.00 per hour.

56.     Subcontractor Defendants knew that if they had honestly informed Plaintiff and Class Members of Defendants' policies before they had started to work for them, Plaintiff and Class Members would obviously refuse to ever begin employment with Subcontractor Defendants. Subcontractor Defendants created misrepresentations by intentionally waiting until Plaintiff and Class Members completed their hiring processes and began performing labor to inform them of these extortion policies.

57.     Further, the public contracting work industry is highly competitive due to the high payrates offered, and can therefore be difficult to obtain. Subcontractor Defendants, being highly familiar with the industry in which they participate, knew that new employees would feel fortunate

to have landed such positions. Subcontractor Defendants knew that it would be difficult for Plaintiff and Class Members to leave employment with Defendants after once Defendants' fraudulent conduct began, because finding another public work position could be difficult and employees may not be so fortunate to land another one in the future. This is shown by the fact that Plaintiff continued employment with Defendants for 10 months despite Defendants' labor law violations alleged herein. Defendants used their experienced knowledge of this hiring challenge to their advantage when engaging in their fraudulent conduct against Plaintiff and Class Members. Subcontractor Defendants knew that their representations were, and continue to be, deceptive and misleading to Plaintiff and Class Members.

58.    By creating false and misleading representations to Plaintiff and Class Members through failing to disclose Subcontractor Defendants' extortion and timeshaving policies during the hiring and contract negotiation process, Subcontractor Defendants engaged in fraudulent conduct against Plaintiff and Class Members.

59.    Plaintiff and Class Members were injured by Defendants' misrepresentations, because they received less value from their contractual employments with Defendants than what they bargained for in reliance on those representations.

### *Fraudulent Tax Filing Claims*

60.    Subcontractor Defendants filed fraudulent tax filing returns on behalf of Plaintiff, FLSA Collective Plaintiffs, and Class Members, because their tax filings included wages that were extorted from Plaintiff, FLSA Collective Plaintiffs, and Class Members.

61.    Subcontractor Defendants' fraudulent tax filings were willful and intentional, because Defendants allowed Plaintiff, FLSA Collective Plaintiffs, and Class Members to receive their full wages before extorting them, therefore directing the taxation of these funds onto them.

62.     As a result of Subcontractor Defendants' fraudulent tax filing, Plaintiff, FLSA

Collective Plaintiffs, and Class Members were taxed for wages they never got to actually keep,

save, or utilize, because the taxed wages were extorted from them by Defendants.

### *WTPA Violation Claims*

63.     Plaintiff and Class Members never received a wage notice from Defendants. They

also did not receive accurate wage statements from Defendants.

64.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into

NYLL—Defendants knowingly and willfully operated their business with a policy of not

providing wage notices to Plaintiff and Class Members at the beginning of their employment with

Defendants.

65.     Defendants further violated the WTPA by failing to provide Plaintiff and Class

Members with accurate wage statements, because wage statements that do not reflect the actual

number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi

Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage

statements provided failed to accurately indicate the amount of time *actually* worked by tipped

employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468

(E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement

should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v.

Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when

paystubs were received, they were not accurate insofar as they did not accurately reflect the

hours *actually* worked") (emphasis added).

66. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

67. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

68.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

69.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

70.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

71.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846,

846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

72.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

73.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

74.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

75.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

76. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

77. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

78. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

79.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

80.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class Members the proper wages, and failed to pay proper wages, including overtime, for all hours worked, due to timeshaving.

81.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members their prevailing wages for work performed on public work projects.

82.     Due to these unlawful acts of Defendants, Plaintiff suffered unpaid wages, including overtime, and liquidated damages in an amount not presently ascertainable. In addition, Plaintiff is entitled to reasonable attorney's fees, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

### ***Individual Retaliation Claims***

83.     During the course of his employment, Plaintiff complained three (3) times to his direct supervisor at Subcontractor Defendants, Azhar Bhadi and Hakeem [LNU], regarding underpayment of wages due to Subcontractor Defendants' illegal policies of: (i) timeshaving, (ii) arrangements of unpaid labor over Saturdays and Sundays, and (iii) extortion.

84.     Two weeks after Plaintiff made his third and final complaint, Azhar Bhadi terminated Plaintiff. Any other reasons for Plaintiff's termination provided by Subcontractor Defendants are clearly pretextual. Plaintiff personally observed two (2) of his co-workers fired because they made similar complaints regarding Subcontractor Defendants' underpayment of wages.

85.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACTON

## (ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS)

86.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

87.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

88.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

89.      At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

90.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiff's rights by failing to pay them wages, including overtime.

91.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount for all hours worked due to a policy of timeshaving.

92.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

93.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

94.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

95.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, and an equal amount as liquidated damages.

96.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

### (ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)

97.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

98.    At all relevant times, Plaintiff and the Class Members were employed by the Defendants within the meaning of the New York Labor Law §§ 2 and 651.

99.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and Class Members.

100.    At all relevant times, Defendants had a policy and practice of timeshaving that failed to pay Plaintiff and Class Members for all hours worked.

101.    Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

102.    Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

103.    Defendants failed to provide proper wage statements with every payment issued to Plaintiff and the Class Members, as required by New York Labor Law § 195(3).

104.    Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime hours, due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## COUNT III

### BREACH OF CONTRACTS
### (Implied Covenant of Good Faith and Fair Dealing)

### (ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)

105.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

106.    Plaintiff and Class Members entered into contracts with Defendants to sell their labor to Defendants.

107.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

108.    Plaintiff and Class Members reasonably expected prevailing wages as one of the benefits of entering into a contract with Defendants, which were known to undertake public works projects.  Plaintiff and Class Members reasonably understood that Defendants were agreeing to pay them all legally required wages.

109.    Plaintiff and Class Members supplied their labor to Defendants as contractually required. But Defendants breached their contract with Plaintiff and Class Members when Defendants failed to pay them legally required prevailing wages.

110.    As a result, Plaintiff and Class Members have been damaged in an amount to be proven at trial.  Defendants must pay this sum to Plaintiff and Class Members, along with an award of interests, costs, and attorneys' fees.[2]

## COUNT IV

### BREACHES OF CONTRACTS
### HARMING THIRD-PARTY BENEFICIARIES

#### (ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)

111.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

112.    When Defendants entered into a contract with the relevant government instrumentality (or its general contractor) to undertake public works, it agreed to pay employees prevailing wages. *See Wright v. Herb Wright Stucco, Inc*., 72 A.D.2d 959, 960, 422 N.Y.S.2d 253, 254, 1979 N.Y. App. Div. LEXIS 14775, *4 (1979) ("Subsequent to 1894 contractors doing business in the public sector were required to include in the contract with the public owner a provision that they would pay their employees the prevailing rate of wage.").

113.    Plaintiff and Class Members were the intended beneficiaries of these agreements.

114.    Defendants' failure to pay Plaintiff and Class Members the prevailing wages constitutes a material breach of Defendants' contracts with the relevant government instrumentalities.

---

[2] While Defendants' contractual breach originated in violations of Labor Law § 220, Plaintiff and Class Members do not bring their claims under Labor Law § 220. Accordingly, they were not required to exhaust administration remedies before bringing this action.  *See Pesantez v. Boyle Envtl. Servs., Inc*., 673 N.Y.S.2d 659, 661, 251 A.D.2d 11, 12, 1998 N.Y. App. Div. LEXIS 6382, *4-5 (1998) ("We note that while plaintiff class can proceed on its common-law breach of contract claims for underpayment of wages and benefits (*see, Fata v Healy Co.,* 289 NY 401), a private right of action for underpayment of wages does not exist under Labor Law § 220 until there has been an administrative determination pursuant to subdivision (8) that either has gone unreviewed or been affirmed in the claimants-employees' favor").

115.    As a result, Plaintiff and Class Members have been damaged in an amount to be proven at trial.  Defendants must pay this sum to Plaintiff and Class Members, along with an award of interests, costs, and attorneys' fees.

## COUNT V

## UNJUST ENRICHMENT

## (ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)

116.    Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

117.    By virtue of Defendants' conduct as alleged herein, and Plaintiff's and Class Members' performance of their contractual obligations to Defendants, Defendants were unjustly enriched by (i) extorting Plaintiff and Class Members, and (ii) Plaintiff's and Class Members' uncompensated labor, and Defendants intentionally (i) extorted Plaintiff and Class Members, and (ii) failed to compensate Plaintiff and Class Members for working on their days off.

118.    The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefits they gained from Plaintiff and Class Members without paying fair value for their work.

119.    As a direct and proximate result of Defendants' wrongful financial extortion and labor extortion to Plaintiff and Class Members, Plaintiff and Class Members have sustained damages in an amount according to proof at trial.

120.    Defendants' financial extortion and labor extortion was done with malice and in conscious disregard of Plaintiff's and Class Members' rights, with the intent to cause financial injury to Plaintiff and Class Members. Plaintiff and Class Members are therefore entitled to an award of punitive damages against Defendants.

## COUNT VI

## COMMON LAW FRAUD

### (ON BEHALF OF PLAINTIFF AND CLASS MEMBERS)

121.    Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

122.    As factually described herein, Defendants intentionally made materially false and misleading representations regarding the nature of Plaintiff's and Class Members' employments.

123.    Plaintiff and Class Members reasonably relied on Defendants' false and misleading representations. They did not know, and had no reason to know, that Defendants' representations were false.

124.    Defendants knew and intended that Plaintiff and the Class Members would rely on their misrepresentations.

125.    Plaintiff and Class Members have been injured as a result of Defendants' fraudulent conduct.

126.    Defendants are liable to Plaintiff and Class Members for damages sustained as a result of Defendants' fraud.

## COUNT VII

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434(a)

### (ON BEHALF OF PLAINTIFF AND THE CLASS)

127.    Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

128.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

129.    By failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

130.    Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

131.    Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT VIII

## RETALIATION UNDER THE FAIR LABOR STANDARDS ACT

### (ON BEHALF OF PLAINTIFF ONLY)

132.    Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

133.    At all relevant times, Plaintiff was an employee of Subcontractor Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA.

134.    Section 15(a)(3) of the FLSA provides that it is a violation to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

135.    As alleged herein, Plaintiff complained to Subcontractor Defendants regarding their illegal policies of failure to pay wages and time-shaving. In response to such complaints, Subcontractor Defendants immediately terminated Plaintiff's employment, in violation of Section 15(a)(3).

136.    Subcontractor Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

137.    As a direct and proximate result of Subcontractor Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## COUNT IX

## RETALIATION UNDER THE
## NEW YORK LABOR LAW

### (ON BEHALF OF PLAINTIFF ONLY)

138.    Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

139.    At all relevant times, Plaintiff was an employee of Subcontractor Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

140.    Subcontractor Defendants willfully violated Plaintiff's rights under the NYLL by retaliating against Plaintiff by terminating his employment after asserting his rights under the NYLL.

141.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, any order issued by the commissioner. . . . (emphasis added).

142.    As alleged herein, Plaintiff was terminated by Subcontractor Defendants when Plaintiff complained about Defendants' underpayment of wages, including overtime, in violation of Section 215(a).

143.    This retaliatory conduct by Subcontractor Defendants was in willful disregard of the provisions of the NYLL.

144.    As a direct and proximate result of Subcontractor Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c.  An award of unpaid compensation due to Defendants illegal timeshaving policies, due under the FLSA and NYLL;

d.  An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements, due under the NYLL;

e.  An award of compensatory damages for Defendants' failure to pay prevailing wages, in an amount to be determined at trial;

f.  An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA or NYLL;

g.  An award of damages for Defendants' breaches of employment contracts;

h.  An award of damages for Defendants' breaches of contracts which harmed third-party beneficiaries;

i.  Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment;

j.  An award of damages arising from Defendants' fraudulent tax filings;

k.  An award of back pay, front pay, compensatory damages, punitive damages, damages for egregious emotional distress, and all other penalties the Court deems

appropriate as a result of Subcontractor Defendants' willful retaliatory conduct against Plaintiff, pursuant to the NYLL and FLSA;

l. An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

m. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n. Designation of this action as a class action pursuant to F.R.C.P. 23;

o. Designation of Plaintiff as a Representative of the Class;

p. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 25, 2024

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By: */s/ C.K. Lee*